UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LINDA F. GREEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) No. 1:12-cv-01875-SEB-TAB |
| CAROLYN W. COLVIN Acting | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**ORDER OVERRULING PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This is an action for judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying Plaintiff Ms. Linda Green ("Ms. Green") Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 416(i), 423(d), & 1382c(a)(3). As discussed below, the Administrative Law Judge ("ALJ") found that even though Ms. Green had some severe impairments, she could still perform her past relevant work as a florist. R. at 16–18. This case was referred for consideration to Magistrate Judge Baker, who issued a Report and Recommendation that the Commissioner's decision be upheld. This cause is now before the Court on Plaintiff's Objections to the Magistrate Judge's Report and Recommendation. For the reasons detailed herein, we adopt the Magistrate Judge's Report and Recommendation and affirm the Commissioner's decision.

I. **Applicable Law and Standard of Review**

To be eligible for DIB, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by a claimant's statement of symptoms." 20 C.F.R. § 404.1508.

The Social Security Administration has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. 20 C.F.R. § 404.1520. If disability status can be determined at any step in the sequence, an application will not be reviewed further. *Id.* At the first step, if the claimant is currently engaged in substantial gainful activity, then he is not disabled. 20 C.F.R. § 404.1520(b). At the second step, if the claimant's impairments are not severe, then he is not disabled. 20 C.F.R. §§ 404.1520(c). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id*. Third, if the claimant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, then the claimant is deemed disabled. The Listing of Impairments are medical conditions defined by criteria that the Administration has pre-determined are disabling. 20 C.F.R. § 404.1525. If the claimant's impairments do not satisfy a Listing, then her Residual Functional Capacity ("RFC") will be determined for the purposes of the next two steps. A claimant's RFC is her ability to do work on a regular and continuing basis

despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The claimant bears the burden of proof at steps one through four. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

At the fifth step, considering the claimant's age, work experience, and education (which are not considered at step four), and her RFC, she will not be determined to be disabled if she can perform any other work in the relevant economy. The burden of proof shifts to the Commissioner at step five to prove that there are jobs that exist in the national economy that the claimant can perform. *Id.* For a claimant with purely exertional limitations, the Commissioner may use the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids") to make a disability determination. The grids correlate the claimant's age, work experience, education, and RFC with a finding of "disabled" or "not-disabled." 20 C.F.R. §§ 404.1569, 404.1569a. Exertional limitations are those which only affect a claimant's ability to meet the strength demands of jobs. 20 C.F.R. § 404.1569a(b). If a claimant has non-exertional limitations or exertional limitations that restrict the full range of employment opportunities at his RFC level, then the grids may not be used at this step. Instead, a vocational expert must testify regarding the number of existing jobs for a person with the claimant's particular medical conditions and vocational characteristics. 20 C.F.R. §§ 404.1569, 404.1569a; *Haynes v. Barnhart*, 416 F.3d 621, 629 (7th Cir. 2005); *Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994).

We review the Commissioner's denial of benefits to determine whether it was supported by substantial evidence or is the result of an error of law. *Rice v. Barnhart,* 384 F.3d 363, 368-369 (7th Cir. 2004); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). "Substantial evidence means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). In our review of the ALJ's decision, we will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [our] own judgment for that of the Commissioner." *Lopez,* 336 F.3d at 539. However, the ALJ's decision must be based upon consideration of "all the relevant evidence," without ignoring probative factors. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In other words, the ALJ must "build an accurate and logical bridge" from the evidence in the record to his or her final conclusion. *Dixon*, 270 F.3d at 1176. We confine the scope of our review to the rationale offered by the ALJ. *See SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Tumminaro v. Astrue,* 671 F.3d 629, 632 (7th Cir. 2011).

When a party raises specific objections to elements of a Magistrate Judge's report and recommendation, the district court reviews those elements *de novo,* determining for itself whether the Commissioner's decision regarding those issues is supported by substantial evidence or was the result of an error of law. Fed. R. Civ. Pro. 72(b). The district court "makes the ultimate decision to adopt, reject, or modify" the report and recommendation, and it need not accept any portion as binding; the court may, however, defer to those conclusions of the report and recommendation to which timely objections have not been raised by a party. *See Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 759–761 (7th Cir. 2009).

**II. The ALJ's Decision**

At the first step of the sequential evaluation process, the ALJ found that there was insufficient evidence to determine whether Ms. Green had engaged in substantial gainful activity during the alleged period of disability. Specifically, the ALJ determined that the record did not establish what duties Ms. Green maintained as the owner of three flower shops during that time.

4

Despite this finding, the ALJ proceeded to the second step and found that Ms. Green suffered from the following severe impairments: Hashimoto's thyroiditis, plantar fasciitis, osteoarthritis, bursitis, obesity, and polyarthralgia. The ALJ did not consider Ms. Green's limitations as a result of her Non-Hodgkin's lymphoma diagnosis because there was no evidence of its existence or diagnosis prior to the date of last insured.

At the third step, the ALJ determined that Ms. Green did not have an impairment or combination of impairments that met or medically equaled the severity of one of the conditions in the Listing of Impairments.

In terms of the RFC, the ALJ found that Ms. Green had the capability to "perform the full range of light work as defined in 20 CFR 404.1567(b)." R. at 16. In coming to this conclusion, the ALJ engaged in a two-step process by which she determined that Ms. Green's impairments could indeed reasonably be expected to produce her symptoms but that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent that they were inconsistent with the ALJ's RFC. In so finding, the ALJ stated that the record regarding Ms. Green's treatment prior to her date last insured, did not reflect her description of the extreme severity of her symptoms. With regard to her Hashimoto's thyroiditis and osteoarthritis, the ALJ noted that Ms. Green's physician, Dr. Stack, opined that her complaints could be dealt with through exercise. The ALJ also noted that Ms. Green did not receive any significant treatment for her plantar fasciitis diagnosis and that she told her physician in January, 2008 that she exercised as a hobby in spite of shoulder pain that she had experienced for several months. The ALJ noted that the medical evidence of record throughout 2008 did not support the extreme symptoms Ms. Green described at her hearing. Finally, the ALJ noted that Ms. Green had admitted that her headaches, which she sought treatment for after her date last

insured, had "come under much better control" in 2009 and that examinations had been characterized as unremarkable. R. at 18.

Finally, the ALJ determined that based on Ms. Green's prior work history, her RFC, and the testimony of a vocational expert, Ms. Green was capable of performing her work as a florist and therefore not disabled.

### III. The Report and Recommendation of the Magistrate Judge

The Magistrate Judge found that Ms. Green had failed to develop any arguments in her brief or to cite to any relevant authority and, thus, found that her arguments were waived. Nevertheless, we assume because Ms. Green had appeared *pro se*, the Magistrate Judge reviewed the ALJ's decision and determined that substantial evidence supported the finding that Ms. Green had been able to perform the physical and mental demands of being a florist during the period of alleged disability.[1]

### IV. Discussion

Ms. Green raises two objections to the Report and Recommendation. First, she alleges that the ALJ did not properly consider the evidence of her diagnosis of Non-Hodgkin's lymphoma, history of headaches, abdominal pain, and immobility which rendered the RFC analysis deficient. *See* Pl's Objections 15-18. Second, Ms. Green asserts that the ALJ used boilerplate language when assessing her credibility which ultimately deprived her of meaningful review. *See Id.* at 19. These objections are discussed below.

**A. The ALJ's RFC Determination**

---

[1] Magistrate Judge Baker determined that "the ALJ's examination of the vocational expert was incomplete and in error" because the ALJ failed to ask the vocational expert about Ms. Green's "ability to perform past relevant work" and her "ability to perform jobs in the national economy." Dkt. No. 23 .at 4. Nevertheless, he found that remand would be futile given the lack of significant treatment from physicians, Ms. Green's unremarkable tests and examinations, and the opinions of state agency medical consultants that Ms. Green did not suffer from any severe impairment during the alleged period of disability.

As noted above, the ALJ determined in her RFC finding that Ms. Green could perform "the full range of light work" in spite of her Hashimoto's thyroiditis, plantar fasciitis, osteoarthritis, bursitis, obesity, and polyarthralgia. R. at 16. Ms. Green contends that the ALJ failed to properly consider her diagnosis of Non-Hodgkin's lymphoma, her long history of headaches as diagnosed by a neurologist, physical limitations due to abdominal pain, and immobility. Pl's Objections at 16-17. She concludes that if this evidence had been properly considered, a different determination would be reached regarding her RFC and, ultimately, her disability. *Id.* at 18. We disagree.

Ms. Green argues that the ALJ erred by failing to recognize the severity of her Hashimoto's thyroiditis, which she contends is established by her November, 2009 diagnosis of non-Hodgkin's lymphoma. The ALJ considered Ms. Green's diagnosis of lymphoma but determined that it was not a "medically determinable impairment" for purposes of Ms. Green's disability claim because this diagnosis came eight months after her last insured date. The ALJ also noted that there was "no evidence to confirm its existence or corresponding limitations prior to her date last insured." R. at 16.

In considering medical evidence outside the insured date, "the Seventh Circuit has recognized that worsening of a claimant's condition after the date last insured does not provide a basis for granting benefits during the relevant time period." *Rubio v. Astrue*, 10 C 6529, 2011 WL 3796755 (N.D. Ill. Aug. 24, 2011); *see also Thomas v. Astrue* 352 Fed. Appx. 115 (7th Cir. 2009). Thus, even if Ms. Green's non-Hodgkin's lymphoma stems from her previous diagnosis of Hashimoto's thyroiditis, a proposition for which Ms. Green provides no support, we find that the ALJ did not err by declining to consider the non-Hodgkin's lymphoma as a severe impairment during Ms. Green's alleged period of disability.

7

Next, Ms. Green argues that the ALJ erred by failing to include restrictions in her RFC as a result of her history of headaches. Even though the ALJ did not consider Ms. Green's headaches to be a "severe impairment," the ALJ noted that Ms. Green sought treatment for chronic headaches and neck pain in May, 2009 and consulted with Dr. Munshower. Notably, these complaints came two months after Ms. Green's alleged period of disability. Neither an MRI, nor a sensory exam conducted by Dr. Munshower, revealed any abnormalities and Dr. Munshower prescribed Topomax to control her headaches. Additionally, the ALJ noted that Ms. Green had reported to Dr. Munshower that her headaches "had come under much better control recently." R. at 18. As such, the ALJ built a logical bridge from the record evidence to her conclusions that the headaches were not a severe impairment or an impediment that warranted additional restrictions in Ms. Green's RFC. Even if this evidence were to show a severe impairment or impediment, it occurred outside of the last date of insured. Therefore, it was proper for the ALJ to disregard it when determining Ms. Green's RFC.

Ms. Green also contends that the ALJ did not properly consider the limiting effects of her abdominal pain. Ms. Green was diagnosed with ulcerative proctosigmoiditis in December of 2007 by Dr. Michael F. Elmore. Specifically, Ms. Green asserts that the ALJ did not properly consider Dr. Elmore's note that "she has very little abdominal pain if she does not sit too long," implying that even sedentary work would be inappropriate for her. Pl's Objection 17.

The ALJ did not expressly reference the diagnosis of ulcerative proctosigmoiditis in her decision. However, the Court's examination of the record revealed that the comment regarding Ms. Green's abdominal pain as a result of sitting for long periods was not an assessment made by Dr. Elmore, rather, it was contained in the patient history. R. at 320. Dr. Elmore's assessment of Ms. Green's ulcerative proctosigmoiditis was that there had been a "good response" to the

prescribed medication. R. at 321. Dr. Elmore also concluded that Ms. Green should continue with prescribed medication and follow-up in six months. *Id.* There was no recommendation that she refrain from sitting for long periods of time. Additionally, this diagnosis came prior to the onset date of June 30, 2008 and therefore, was properly excluded by the ALJ.

Ms. Green also argues that the ALJ's RFC was deficient because it did not include any limiting effects related to "reaching, handling, or fingering." However, the ALJ expressly discussed Ms. Green's assertion regarding limitations due to her immobility. The ALJ noted that she received treatment for shoulder pain from Dr. Jeffery Whitaker, an orthopedic specialist, who diagnosed Ms. Green with bursitis of the left shoulder. *See* R. at 318. The ALJ noted that Dr. Whitaker suggested that this should be treated with a cortisone injection and exercise. *Id.* at 318. Ms. Green points to no evidence that the diagnosis resulted in limitations on her mobility. Ms. Green also saw her primary care physician for arm pain, as noted by the ALJ, and the record reveals no significant treatment or indication of limitation. Thus, the ALJ's conclusion that Ms. Green's shoulder problems did not translate into restrictions in her RFC is supported by the evidence.

## B. The ALJ's Credibility Determination

In making her findings, the ALJ properly followed the two step process for assessing the claimant's symptoms and making a determination about disability. The second step requires that the ALJ determine the credibility of Ms. Green's statements about the intensity, persistence, and limiting effects of her symptoms. R. at 17. The ALJ concluded that these statements were not credible. *Id.* Ms. Green contends that the ALJ used only boilerplate language in determining her credibility. Pl's Objection 19. However, an ALJ's use of boilerplate language does not automatically disqualify her conclusion as long as the ALJ has linked that conclusion to facts.

9

*See Pepper v. Colvin*, 712 F.3d 351 (7th Cir. 2014). Additionally, courts will only overturn a credibility finding if it is "patently wrong." *Jens v. Barnhart*, 347 F.3d 209 (7th Cir. 2003).

While the ALJ did use some boilerplate language in the discussion of Ms. Green's credibility, she went on to specifically discuss how none of the medical evidence contained in the record reflects the "extreme fatigue, weakness, immobility, and even memory loss" that Ms. Green claimed at the hearing. R. at 18. Furthermore, she discussed all of the specific medical evidence in the record and how it did not reflect the serious symptoms Ms. Green reported. First, the ALJ addressed Ms. Green's hernia surgery and how that did not result in any further complications or limitations. *Id.* at 17. Next, the ALJ discussed the diagnosis of Hashimoto's thyroiditis and osteoarthritis and how the treating physician recommended exercise as a treatment plan for these conditions. *Id.* Finally, the ALJ discussed Ms. Green's shoulder pain and how the treating physician indicated that there were no abnormalities after an x-ray, and he gave her a cortisone shot for the pain. *Id.* These references indicate that the ALJ relied on specific facts from the record, not just boilerplate language, when making her conclusions. Therefore, the use of boilerplate language does not affect the ALJ's determination as to Ms. Green's credibility. *See Pepper v. Colvin*, 712 F.3d 351 (7th Cir. 2014).

## Conclusion

We find that neither of Ms. Green's objections to Magistrate Judge Baker's Report and Recommendation has merit. The severe impairments that existed during the insured period would have allowed Ms. Green to do the light work required of a florist and there is substantial evidence on the record to support this finding. The Plaintiff's objections to the Magistrate Judge's Report and Recommendation are OVERRULED and we ADOPT the recommendations

set forth in the Magistrate Judge's Report and Recommendation. Final judgment shall enter in favor of Defendant and against Plaintiff.

IT IS SO ORDERED.

Date: 3/25/2014

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Randal S. Forbes
FORBES LAW OFFICE
randy@needsocialsecurity.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov